UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X
                                          x
IN RE AOL TIME WARNER ERISA               x     02 Civ. 8853 (SWK)
LITIGATION                                x
                                          x     **MEMORANDUM OPINION**
------------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

        This Opinion considers the fairness of a $100 million class

action settlement (the "Settlement") reached in litigation

brought pursuant to the Employee Retirement Income Security Act

of 1974 ("ERISA") by participants of AOL Time Warner, Inc.'s

("AOLTW")[1] 401(k) defined contribution plans (the "Plans").[2] The

Settlement follows the Court's approval of a $2.65 billion

settlement reached in the primary securities class action

litigation, see In re AOL Time Warner, Inc. Sec. & "ERISA"

Litig., No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236

(S.D.N.Y. Apr. 6, 2006), and provides recovery to the Plans

separate from the Plan members' recoveries under the securities

settlement. Plaintiffs now move for certification of a

settlement class (the "Class") and final approval of the

Settlement, the notice, and the amended Plan of Allocation. For

the reasons set forth below, Plaintiffs' motion is granted.

---

[1] Although Defendant AOLTW has changed its name to Time Warner,
Inc., for clarity, the Court will continue to refer to the
merged entity as AOLTW, or the Company.
[2] The Plans at issue in the litigation are the AOL Time Warner
Savings Plan, the Time Warner Thrift Plan, and the Time Warner
Cable Savings Plan.

## I.    Background

The Settlement resolves three ERISA lawsuits consolidated by the Court on March 24, 2003. In the Consolidated ERISA Complaint (the "Complaint"), Plaintiffs sought relief for losses incurred by the Plans as a result of the defendants' alleged breaches of their ERISA-mandated duties. The Complaint focuses on the Plans' allegedly imprudent investment in AOLTW stock, misrepresentations made to Plan participants, and various other breaches of fiduciary duty. The Complaint named AOLTW, several of its directors and officers, and the administrative committees of the Plans as defendants ("Defendants").

In early 2005, the Court considered Defendants' motions to dismiss, allowing the Complaint to proceed on several counts. See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., No. MDL 1500, 02 Civ. 8853(SWK), 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005). Defendants filed their answer shortly thereafter. Defendants then filed motions for summary judgment and judgment on the pleadings, while Plaintiffs filed a motion for class certification. All of these motions were pending before the Court at the time the Settlement was reached.

Prior to entering into the Settlement, Plaintiffs received and reviewed millions of documents, some publicly available and others produced in discovery. In addition to reviewing documents pertinent to the conduct allegedly responsible for the declining

value of AOLTW stock, Plaintiffs requested documents specific to their ERISA breach of fiduciary duty claim. Discovery also encompassed Plaintiffs' participation in numerous depositions during this period. Further, Plaintiffs consulted experts regarding the strength of their claims, the calculation of losses, and the viability of Defendants' loss causation defense.

While continuing to prepare their legal claims and defenses, the parties entered into settlement negotiations in the fall of 2005. In connection with these negotiations, the parties prepared extensive submissions for a mediation session overseen by a court-appointed special master. This first unsuccessful mediation session set the stage for another round of briefing and a second mediation session with the special master in February 2006, which resulted in the Settlement now before the Court. The Settlement provides for $100 million to be paid to the Plans and then distributed to Plan members.

The Court held a preliminary approval hearing on April 26, 2006, and preliminarily approved the Settlement on May 3, 2006. Plaintiffs caused notice to be sent to over 65,000 potential class members in the following weeks. In addition, Plaintiffs published summary notice of the Settlement in the newspaper U.S.A. Today, created a website for the Settlement, and set up a toll-free number to provide information and address questions posed by potential Class members. The notice procedures yielded

two objections: one to the breadth of the Settlement release and the nature of the Class, and another to the request for attorney's fees and class representative's awards.[3] Both objectors attended the final approval hearing on July 19, 2006.

Finally, in accordance with Section 2.5 of the Settlement Agreement, Plaintiffs submitted the Settlement to an independent fiduciary for review. This review was carried out by a company composed of impartial, experienced ERISA lawyers. On June 29, 2006, the fiduciary issued its report, finding that "the Settlement is reasonable in light of the substantial recovery that the Plans will obtain, the risks and costs of continued litigation and the value of claims foregone." (Report of the Independent Fiduciary 2.)

## II.  Discussion

### A. Certification of the Settlement Class

Solely for settlement purposes, see Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), Plaintiffs seek certification of a class of "all current and former participants and beneficiaries of the Plans for whose individual accounts the Plans purchased and/or held interests in the AOLTW Stock Fund at any time during the period from January 27, 1999 through and

---

[3] The first objection will be considered below, in the context of both the fairness of the Settlement and the certification of the Class. The second objection will be addressed in a later opinion establishing attorney's fees.

including July 3, 2003" (the "Class Period"). (Pls. Mot. for Final Approval 42.) Federal Rule of Civil Procedure 23 governs class certification. A class must satisfy each of the four requirements of Rule 23(a)--numerosity, commonality, typicality, and adequacy of representation--and one or more of the subsections of Rule 23(b). As discussed below, the Class satisfies each of these prerequisites.

### 1. Numerosity

To qualify for certification, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Class here is comprised of the members of several retirement plans established for tens of thousands of AOLTW employees. Plaintiffs sent more than 65,000 notices to potential class members on the basis of records provided by AOLTW. The numerosity requirement is clearly satisfied.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the context of an ERISA action claiming breach of fiduciary duty, class members are related by virtue of their common membership in a retirement plan. Therefore, ERISA breach of fiduciary duty actions regularly present common questions of law and fact. See, e.g., In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 452 (S.D.N.Y. 2004); Banyai v. Mazur, 205 F.R.D. 160, 163

(S.D.N.Y. 2002). This action is no different. Class members here share a number of questions of law and fact relating to the identification of fiduciaries, whether the defendants acted as fiduciaries, and the existence of ERISA violations. The Class is sufficiently common to be certified.

### 3. Typicality

Under Rule 23(a)(3), the claims of class representatives must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). This requirement is met where the proposed class representatives' claims "arise from [the] same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." In re Oxford Health Plans, Inc., 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (citing In re the Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992)). Here, the class representatives' claims are typical of the Class. All representatives were employees or participants in one of the Plans during the Class Period and sustained injury from the breaches of fiduciary duty alleged in the Complaint.

### 4. Adequacy

The final Rule 23(a) provision requires that class representatives "fairly and adequately protect the interests of

the class." Fed. R. Civ. P. 23(a)(4). Under Rule 23(a)(4), courts must consider "(i) whether the class representatives' claims conflict with those of the class and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation." In re Global Crossing, 225 F.R.D. at 453 (citing In re Oxford, 191 F.R.D. at 376; In re the Drexel Burnham Lambert Group, 960 F.2d at 291).

Here, there are no discernible conflicts between the Class and its representatives. The representatives will recover through the Plans in the same manner as every other Class member, and must prove identical factual and legal predicates. Furthermore, Class counsel are qualified attorneys with considerable ERISA experience. Their prosecution of this lawsuit has secured the substantial Settlement now under consideration. Throughout this litigation, they have shown themselves to be capable and qualified to represent the Class.

### 5. Maintainability

In addition to finding that a class meets the requirements of Rule 23(a), the court must ascertain whether the class is maintainable under one or more of the Rule 23(b) criteria. Plaintiffs contend that the Class may be certified as a non-opt-out class under Rule 23(b)(1)(B). The Court agrees.[4]

---

[4]  Although Plaintiffs also contend that the Class may be maintained under Rule 23(b)(1)(A) and 23(b)(2), the Court's

Rule 23(b)(1)(B) provides for class certification when:

> the prosecution of separate actions by or against individual members of the class would create a risk of . . . adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1)(B). A note to Rule 23 explains that Rule 23(b)(1)(B) applies "to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23 advisory committee's note, cited in Koch v. Dwyer, No. 98 Civ. 5519(RPP), 2001 WL 289972, at *5 (S.D.N.Y. Mar. 23, 2001). The claims underlying the Settlement are of just this sort.

As a matter of law, the relief sought by Plaintiffs is directed to the Plans, rather than to individual Plan participants. See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985). A breach of fiduciary duty claim brought by one member of a retirement plan necessarily affects

---

determination that the Class is properly maintained under Rule 23(b)(1)(B) makes any further holding unnecessary.

The Supreme Court has recognized that classes certified under Rule 23(b)(1) do not provide class members an opportunity to opt-out of the class. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 834 & n.13 (1999) (citation omitted). Due to the plan-wide nature of the relief sought here, see infra, certification of a non-opt-out class is not only practical, but necessary.

the rights of the rest of the plan members to assert that claim, as the plan member seeks recovery on behalf of the plan as an entity. Accordingly, by the very nature of the relief sought, the prosecution of separate actions would risk prejudice to putative class members. See, e.g., In re Global Crossing, 225 F.R.D. at 453; In re Worldcom, Inc. ERISA Litig., No. 02 Civ. 4816 DLC, 2004 WL 2211664, at *3 (S.D.N.Y. Oct. 4, 2004); Koch, 2001 WL 289972, at *5; Gruby v. Brady, 838 F. Supp. 820, 828 (S.D.N.Y. 1993). Certification of the Class as a non-opt-out class under Rule 23(b)(1)(B) is therefore appropriate.

In sum, Plaintiffs have satisfied all of the prerequisites for class certification under Rule 23(a) and have demonstrated that a class may be maintained under Rule 23(b)(1)(B). Therefore, the Class is certified for settlement purposes.

**B. Standard for Final Approval of Class Action Settlements**

Federal Rule of Civil Procedure 23(e) governs the settlement of class action litigation. Courts may approve class action settlements after proponents of the settlement have distributed adequate notice of the proposed settlement and the settlement has been the subject of a fairness hearing. Fed. R. Civ. P. 23(e)(1). The touchstone for court approval is that the settlement be "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(1)(C), and "not a product of collusion." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (citing Joel A. v.

_Giuliani_, 218 F.3d 132, 138 (2d Cir. 2000)); _see also_ _Wal-Mart Stores, Inc. v. Visa U.S.A. Inc._, 396 F.3d 96, 116 (2d Cir. 2005), _cert. denied_, 125 S. Ct. 2277 (2005).

Courts analyze a settlement's fairness, reasonableness and adequacy with reference to both "the negotiating process leading up to settlement as well as the settlement's substantive terms." _D'Amato_, 236 F.3d at 85 (citation omitted). The court may not engage in mere "rubber stamp approval" of the settlement, yet it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." _City of Detroit v. Grinnell Corp._, 495 F.2d 448, 462 (2d Cir. 1974).

Further, courts should be "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" _Wal-Mart_, 396 F.3d at 116 (quoting _In re PaineWebber Ltd. P'ships Litig._, 147 F.3d 132, 138 (2d Cir. 1998)). As the Second Circuit has long recognized, "[t]here are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." _Weinberger_, 698 F.2d at 73 (citations omitted). These concerns underlie the Court's analyses of both the procedural and substantive fairness of the Settlement.

### C. Procedural Fairness: The Negotiation Process

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the

settlement resulted from 'arms-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" D'Amato, 236 F.3d at 85 (quoting Weinberger, 698 F.2d at 74). This inquiry into a settlement's procedural fairness helps to ensure that the settlement is not the product of collusion. Evidence of arms-length negotiation between experienced counsel that have engaged in meaningful discovery may give rise to a presumption of fairness. Wal-Mart, 396 F.3d at 117 (citation omitted).

In evaluating a settlement's procedural fairness, the Second Circuit has noted that that "a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." D'Amato, 236 F.3d at 85 (citing County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1323 (2d Cir. 1990)). This Settlement is the product of multiple rounds of arms-length negotiations between experienced counsel, overseen and assisted by a court-appointed special master. Through discovery and motion practice, counsel were well-informed of the merits of the claims by the time the Settlement was reached. The imprimatur of the independent fiduciary is further evidence of the procedural fairness of the Settlement. See In re Global Crossing, 225 F.R.D. at 462.

In light of the substantial evidence that settlement negotiations were conducted at arms-length without any hint of collusion, the Court credits the Settlement with a presumption of fairness. The propriety of this presumption is supported by the fairness of the Settlement terms.

**D. Substantive Fairness: The Settlement Terms**

In evaluating the fairness, reasonableness, and adequacy of a settlement, the court must consider the "substantive terms of the settlement compared to the likely result of a trial." Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983) (citations omitted). In order to make this evaluation, courts in this Circuit have consistently employed the Grinnell factors:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery;
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Wal-Mart, 396 F.3d at 117 (quoting Grinnell, 495 F.2d at 463). When appropriate, the Court will combine multiple Grinnell factors to more efficiently appraise the Settlement.

**1. Complexity, Expense and Likely Duration of the Litigation**

What has already proven to be a complex, long, and expensive litigation seems unlikely to prove any less so if the parties were to continue on to trial. Plaintiffs originally asserted four claims for breach of fiduciary duty, three of which survived dismissal. See In re AOL Time Warner, 2005 WL 563166, at *8. These claims implicate complicated questions pertaining to Defendants' status as fiduciaries, their ERISA responsibilities, and the very sustainability of breach of fiduciary duty claims in the context of the "stock drop" claims asserted here. See, e.g., Summers v. State Street Bank & Trust Co., 453 F.3d 404, 410-11 (7th Cir. 2006) (discussing the conflicting mandates of ERISA fiduciaries investing in an employer's securities). In the four years since the commencement of this lawsuit, the parties have engaged in considerable discovery, vigorously contested motion practice, and intensive settlement negotiations. Plaintiffs have every reason to expect Defendants' continued disputation of the underlying claims and their assertion of every available defense leading up to trial and, if necessary, at trial. Were a trial necessary, the difficult factual issues present in this case would likely necessitate a further costly and lengthy courtroom battle.

Conversely, the $100 million Settlement under consideration "would grant relief to all class members without subjecting them

13

to the risks, complexity, duration and expense of continuing litigation." In re Global Crossing, 225 F.R.D. at 456-57; see also Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (approving settlement that resulted "in a substantial and tangible present recovery, without the attendant risk and delay of trial"). After careful consideration of the circumstances of this litigation, the Court finds that a trial would likely be long, complex, and costly. This factor favors the Settlement.

### 2. Reaction of the Class to the Settlement

The exceptionally low number of objections submitted by the Class also weighs in favor of the Settlement. The reaction of the class is commonly gauged with reference to the extent of objection to the settlement. Courts in this Circuit have noted that "the lack of objections may well evidence the fairness of the Settlement." In re Am. Bank Note Holographics, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); see also In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("A favorable reception by the Class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval.") (quoting Grinnell, 495 F.2d at 462).

Here, the Settlement Administrator published a summary notice in a national newspaper and mailed notice to approximately 65,000 putative Class members. In response, the

Court received only two objections, and only one directed at the nature of the Settlement or the Class. The relative lack of dissent here compares favorably with settlements previously approved in this District. See, e.g., D'Amato, 236 F.3d at 86-87 (eighteen objectors out of 27,883 notices); Hicks v. Stanley, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (three objectors out of approximately 100,000 potential members of the class); In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319, 337-338 (S.D.N.Y. 2005) (seven objectors out of 4,000,000 potential class members and 830,000 claimants).

### 3. Stage of Proceedings and Amount of Discovery Completed

Consideration of the third Grinnell factor also supports the Settlement. Courts have approved settlements at all stages of the proceedings. The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement. The parties need not "have engaged in extensive discovery" as long as "they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement." In re Austrian & German Holocaust Litig., 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting Plummer v Chemical Bank, 668 F.2d 654, 660 (2d Cir. 1982)); see also Maley, 186 F.

Supp. 2d at 363; <u>In re Am. Bank Note Holographics</u>, 127 F. Supp. 2d at 425-26.

Here, the parties had engaged in extensive factual investigation at the time of the Settlement Agreement. Plaintiffs have survived Defendants' motion to dismiss and are prepared to respond to Defendants' motions for summary judgment and judgment on the pleadings. Further, the parties engaged in thorough briefing of their claims to support their positions in settlement negotiations overseen by the Special Master. That the parties are still engaged in pre-trial factual discovery is no bar to settlement here. <u>See, e.g.</u>, <u>Teachers' Ret. Sys. v. A.C.L.N., Ltd.</u>, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); <u>In re Gulf Oil/Cities Service Tender Offer Litig.</u>, 142 F.R.D. 588, 591 (S.D.N.Y. 1992); <u>Maley</u>, 186 F. Supp. 2d at 364.

### 4. Risks of Class Prevailing (Establishing Liability and Damages, and of Maintaining the Class through Trial)

One of the Court's central inquiries when appraising a settlement is the likelihood that the class would prevail at trial in the face of the risks presented by further litigation. An analysis of all the relevant risks in this litigation also favors the Settlement.

<u>Grinnell</u> factors four through six specifically advise courts to consider the risks of establishing liability and

damages, and of maintaining the class through trial. 495 F.2d at 463. These inquiries require courts to consider legal theories and factual situations without the benefit of a fully developed record, thus courts must heed the Supreme Court's admonition not to "decide the merits of the case or resolve unsettled legal questions." Carson v. American Brands, Inc., 450 U.S. 79, 88 n.14 (1981). Rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." In re Global Crossing, 225 F.R.D. at 459 (citing In re Holocaust Litig., 80 F. Supp. 2d at 177).

Plaintiffs face a number of risks in establishing liability here. Perhaps most notably, several courts have recently struck down lawsuits seeking recovery from fiduciaries that maintained heavy investment in a corporation's securities while their values declined. See, e.g., Summers, 453 F.3d at 410-11; DiFelice v. U.S. Airways, Inc., 436 F. Supp. 2d 756, 784-85 (E.D. Va. 2006); In re Worldcom, Inc. ERISA Litig., 354 F. Supp. 2d 423, 449-50 (S.D.N.Y. 2005). Further, if the Court were to adopt the "impending collapse" standard in determining whether investment diversification was required, Plaintiffs would be forced to overcome a presumption that continued investment in AOLTW stock was prudent. In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 475 (S.D.N.Y. 2005). Plaintiffs also face the risk that the Court will adopt Defendants' standing argument and

grant their Motion for Partial Judgment on the Pleadings. See also Fisher v. J.P. Morgan Chase & Co., 230 F.R.D. 370, 375-76 (S.D.N.Y. 2005) (denying that beneficiaries have standing to recoup individual recovery on behalf of the plan).

Beyond these issues, Plaintiffs would face further disputation of their core allegations regarding the defendants' fiduciary status, the discharge of their duties, the prudency of the investment in AOLTW stock, and the existence of loss causation. The survival of a plaintiff's claims under the lenient standard of Rule 12(b)(6) does not always portend a successful resolution on the merits. The substantive risks faced in this litigation are compounded by the fact that ERISA claims are rarely decided on their merits at trial, thus ERISA litigation boasts few successful precedents.

Plaintiffs' damages claims are also subject to considerable risk. Regardless of the standard for loss causation that may be applied in the context of ERISA litigation, compare Dura Pharms v. Broudo, 544 U.S. 336, 346 (2005), with Donovan v. Bierwirth, 754 F.2d 1049, 1056-57 (2d Cir. 1985), Plaintiffs could expect a vigorous challenge to their damage calculations. Further, the nature of the Plans' shares (the majority of which were merely held prior to the merger, rather than being purchased after the merger) give rise to a characterization of Plaintiffs' claims as non-recoverable holder claims, which could result in a

significant reduction in the calculation of damages. "In short, the legal and factual complexities and uncertainties of proving the ERISA damages case also militate in favor of settlement." <u>In re Global Crossing</u>, 225 F.R.D. at 460.

Finally, the Court cannot discount the risk of maintaining the class through trial. The Court certified the Class for settlement purposes only. Plaintiffs report that they had drafted a motion for class certification prior to the Settlement and had fully anticipated that Defendants would oppose class certification vigorously. As such, even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement.

**5. Ability of Defendants to Withstand a Greater Judgment**

The ability of Defendants to pay a greater judgment does not militate against the Settlement. This factor typically weighs in favor of settlement where a greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship. <u>See, e.g.</u>, <u>In re Warner Comms. Sec. Litig.</u>, 618 F. Supp. 735, 746 (S.D.N.Y. 1985). Here, AOLTW remains a solvent, highly capitalized company, with assets greatly exceeding the $100 million Settlement. Neither party contends that Defendants are incapable of withstanding a greater judgment. However, "the fact that a defendant is able to pay more than it offers in

settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." In re Painewebber, 171 F.R.D. at 129; see also D'Amato, 236 F.3d at 86; In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 477-78 (S.D.N.Y. 1998). This factor must be weighed in conjunction with all of the Grinnell factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund.

### 6. Range of Reasonableness of the Settlement Fund

Finally, the $100 million Settlement fund is well within the range of reasonableness contemplated by Grinnell. The last two Grinnell factors consider the settlement fund's range of reasonableness "in light of the best possible recovery" and compared to a "possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463. Though courts are encouraged to consider the best possible recovery, the range of reasonableness inquiry is tightly bound to the risks of litigation, which have been developed in greater detail above. See supra Part II.D.4. As such, the following discussion must be tempered by the Court's earlier finding that continued litigation would proceed with a high degree of risk.

As with the related securities class action settlement, see In re AOL Time Warner, 2006 WL 903236, at *12-13, the complexity of calculating damages in this action makes it difficult to accurately project the best possible recovery, even for mere

20

comparison. It is clear, however, that the Settlement will not wholly restore the Plans' total losses over the Class Period. Yet, "the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." In re Global Crossing, 225 F.R.D. at 460-61. Here, the more helpful consideration is the amount of recovery in light of the considerable risks of litigation. See In re Painewebber, 171 F.R.D. at 129-30; In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

In this regard, the Court considers not only the risk inherent in the distance between the parties' respective positions on the merits and the gravity of its risk analysis above, see supra Part II.D.4, but the immediacy of a settlement payment versus the potential for a later recovery at trial. See In re Global Crossing, 225 F.R.D. at 461; In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly."), aff'd in part, rev'd in part on other grounds, 818 F.2d 179 (2d Cir. 1987). As one of the largest ERISA settlements to date, the $100 million settlement is well within the range of reasonableness, even apart from its immediacy. That the Settlement funds here will bestow a benefit on Class members in addition to any recovery they may claim from

21

the securities class action settlement only strengthens this finding.

After carefully considering the Grinnell factors, most of which weigh in favor of the Settlement, the Court finds the substantive terms of the Settlement fair, reasonable, and adequate. The conclusions of the Independent Fiduciary further support this finding. (Report of the Independent Fiduciary 1-2.)

**E. Notice**

Proponents of a settlement must provide reasonable notice to the settlement class in accordance with due process and Federal Rule of Civil Procedure 23. See Wal-Mart, 396 F.3d at 113. While there are "no rigid rules" to be applied, "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" Id. at 114 (quoting Weinberger, 698 F.2d at 70).

"It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." In re Prudential Sec. Inc. Ltd. P'Ships Litig., 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (citations omitted). In the context of the non-opt-out class here, "Rule 23 requires only such unspecified 'appropriate notice' as 'the court may direct.'" In re Global

Crossing, 225 F.R.D. at 448 (quoting Fed. R. Civ. P. 23(c)(2)(A)).

In this instance, the form and method of notice approved by the Court's preliminary approval order were effectuated by Class counsel. Notice was sent to tens of thousands of the Plans' participants, published in a national newspaper, and an informational website and toll-free telephone number were created. These efforts were sufficient to alert prospective Class members to the terms of the proposed Settlement and their ability to object to the Settlement. Notice procedures such as these have been found more than adequate in similar cases. See, e.g., In re Worldcom, Inc. ERISA Litig., No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *3 (S.D.N.Y. Oct. 14, 2004); In re Global Crossing, 225 F.R.D. at 448-50. The Court finds that the notice procedures and the content of the notice were adequate.

**F. The Plan of Allocation**

In approving a plan of allocation, the court "must ensure that the distribution of funds is fair and reasonable." In re Global Crossing, 225 F.R.D. at 462 (citing Maley, 186 F. Supp. 2d at 367). Under the amended Plan of Allocation (Mot. for Approval Ex. B, July 10, 2006), Class members will have their recovery calculated according to the decrease in value of their Plan holdings during the Class Period. All Class members are treated equally under the formula, and all members qualifying

for recovery will have their share of the funds automatically distributed to their Plan accounts or, if they are no longer Plan members, an account created for them under the terms of the Settlement. There have been no objections to the Plan of Allocation, and similar plans proposed in this District have been found reasonable. See, e.g., In re Global Crossing, 225 F.R.D. at 463. Accordingly, the Court approves the Plan of Allocation as fair and reasonable.

### G. Objections

The Court received two objections to the Settlement prior to the deadline. The first objection contested the application for attorney's fees and the class representatives' awards. The Court reserves judgment on the fee application at this time and will address any relevant objections in a separate ruling. The other objection was filed by Matthew Calvin ("Calvin"), and is directly relevant to the maintenance of the Class and the fairness of the Settlement.

Calvin is a former employee of the Company and a former participant in two of the retirement plans covered by this Settlement. Calvin held stock in covered Plans during the Class Period, and thus is a Class member. In November 2005, Calvin filed a common law fraud claim against Time Warner in New York state court. Concerned that the ERISA settlement will jeopardize his ability to maintain his state court action, Calvin requests

that the Court (1) reject the proposed Settlement so long as it does not allow Class members to opt-out, or (2) expressly provide that the Settlement, particularly its release provision, does not prejudice Calvin's right to prosecute his pending state court action.[5]

As discussed above, the Class is properly maintained as a non-opt-out class due to the plan-wide nature of the relief sought. See supra Part II.A.5. Calvin, however, requests that he be granted special permission to opt-out of the Class. Calvin relies on County of Suffolk v. Long Island Lighting Co. ("LILCO"), 907 F.2d 1295, 1304-05 (2d Cir. 1990). In that case, the Second Circuit affirmed a district court's decision to allow a class member to opt out of a "limited fund class action [certified] under Rule 23(b)(1)(B)." Id. at 1304-05. The panel analyzed the reasonableness of allowing the opt-out on two grounds: (1) whether "the class's ability to recover could . . . be substantially impaired" by a disposition in favor of the opt-out class member; and (2) whether the opt-out's "situation" was sufficiently distinguishable from the class to implicate the "basic fairness" of restricting that class member's ability to

---

[5] Also at issue in the state court action are a substantial number of stock options obtained during Calvin's employment at the Company. The parties, however, agree that Calvin's claim regarding his stock options will not be affected by the Settlement. (Pls.' Resp. to Calvin's Objections 2-3; Time Warner's Opp'n to Calvin's Objections 3.)

opt out of the settlement. Id. at 1305. LILCO, however, is distinguishable from the instant case on both its legal and factual bases.

The LILCO panel first considered whether allowing a class member to opt out would substantially impair the class's ability to recover. Answering this question in the negative "eliminate[d] from consideration an overriding reason for not allowing [the opt-out] to exclude itself from the class action, i.e., the loss of the benefit intended to be gained by Rule 23(b)(1)(B) certification." Id. at 1305. In LILCO, the 23(b)(1)(B) certification was predicated on the existence of a limited fund.[6] Thus, "the benefit" of a class certified under Rule 23(b)(1)(B) was the ability to restrict potential claims to the fund. The district court's determination that the fund was in fact not so limited nullified the benefit (i.e., preservation of the fund) of a non-opt-out class, weakening the rationale for strictly maintaining the prohibition of opt-outs.

This aspect of the LILCO holding, however, is inapplicable here. Rule 23(b)(1)(B) certification is not restricted to

---

[6] According to the Second Circuit panel, LILCO was concerned with a situation in which "'claims are made by numerous persons against a fund insufficient to satisfy all claims.'" Id. at 1303 (quoting Fed. R. Civ. P. 23 advisory committee's note, 39 F.R.D. 69, 101 (1966)). In other words, LILCO was decided in the context of a class certified under Rule 23(b)(1)(B) because it was a "limited fund" class. Id. at 1304; see also Doe v. Karadzic, 182 F.R.D. 424, 428 (S.D.N.Y. 1998).

classes seeking recovery from a limited fund. In the context of a class seeking recovery under ERISA for a breach of fiduciary duty, 23(b)(1)(B) certification is appropriate because a fiduciary's breach "similarly affect[s]" the legal rights of a large class of plan members. Fed. R. Civ. P. 23 advisory committee's note. Thus, the benefit of a non-opt-out class here is inapposite to the benefit of a class certified under the "limited fund" rationale. Here, a non-opt-out class is appropriate because individual relief is not contemplated by the legal protections being invoked. The benefit is consistency, efficiency, and fidelity to ERISA's statutory framework.

The second ground of the LILCO panel's decision was that the prospective opt-out was situated so differently from the rest of the class that it would be unfair to restrict that party's ability to opt out. Even a cursory look at the facts of that case indicates just how distinctive the opt-out's situation was. In LILCO, the class member seeking to opt out of the class had "[a]t great expense . . . litigated its claims and obtained a jury verdict in its favor." Id. at 1305 (quoting district court opinion). Here, Calvin's state court action is at a much earlier stage of litigation. See Doe v. Karadzic, 182 F.R.D. 424, 428-29 (S.D.N.Y. 1998). While Calvin has filed a claim, the case has moved little beyond that point. The Court is unwilling to hold that the mere filing of a claim shortly before a class

enters into a settlement agreement makes an individual class member sufficiently distinguishable from the rest of the class to implicate basic fairness.

In sum, the present litigation, unlike <u>LILCO</u>, does not concern a limited fund, and Calvin's litigation position is not as distinguishable from the Class as was the situation of the <u>LILCO</u> opt-out. As the <u>LILCO</u> panel grounded its decision on the combined strength of these two considerations, their inapplicability to this case persuades the Court that this is not one of those "narrow" circumstances in which basic fairness demands that a class member be permitted to opt out of a mandatory class certified under Rule 23(b)(1)(B). Calvin's request to be excluded from the Class is denied.

Alternatively, Calvin seeks reassurance that the Settlement will not prejudice his right to proceed with his pending state court action. This request is intertwined with Calvin's claim that the Settlement Agreement's release provision is overbroad. This aspect of Calvin's objection implicates two separate questions: (1) whether the release is overbroad; and, (2) if the release is not overbroad, whether it forecloses Calvin's state court action.

The Second Circuit's recent decision in <u>Wal-Mart</u> is instructive on the first of these questions. The <u>Wal-Mart</u> panel begins with the proposition that class action plaintiffs "may

28

release claims that were or could have been pled in exchange for settlement relief." 396 F.3d at 106. Applying the "identical factual predicate" doctrine, the panel approved a release that had the effect of "preclud[ing] lawsuits relating to any conduct that was alleged in the complaint or was, or could have been, asserted in this litigation." Id. at 107. The panel found language of this breadth appropriate because "[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims." Id. at 108 (citing TBK Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982)). The language utilized by the release in this action closely tracks the language used by the Wal-Mart panel.[7] The Settlement appropriately precludes claims "shared alike" by the ERISA class. TBK Partners, 675 F.2d at 461. Consequently, the Settlement release is not overbroad.

As for the second question, whether Calvin's state court action is preempted by the release, the Court is not in a position to finally dispose of that action. To the extent that Calvin's claims are based on shares held in the Plans, he will recover under the Settlement, and these claims are appropriately released, regardless of the nature of the claim he now seeks to

---

[7] Calvin objects to language in the Settlement Agreement that releases "all claims . . . arising out of or in anyway related to, directly or indirectly, any or all of the . . . matters . . . that . . . could have been alleged . . . in the Complaint . . . ." (Calvin's Br. 5-6 (citing Settlement Agreement ¶ 3.2).)

assert. See id. at 460 ("[A] court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."). If Calvin has asserted a claim for shares held outside of the Plans, however, that portion of his suit would not be contemplated by a release of claims arising from, or related to, this litigation. The facts necessary for a resolution of this question are not before the Court, nor does the Court have jurisdiction to formally dispose of the action. Therefore, the application of the release to the specific circumstances of Calvin's action is within the capable hands of the Supreme Court of the State of New York.

## III. Conclusion

For the foregoing reasons, Plaintiff's petition is granted. An appropriate Final Order and Judgment accompanies this Opinion. A separate opinion establishing attorney's fees and expenses will follow.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/06

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT/JUDGE

Dated:    New York, New York
          September 27, 2006

30