UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
IN RE AOL TIME WARNER ERISA         x
LITIGATION                          x      02 Cv. 8853 (SWK)
                                    x
                                    x      **OPINION AND ORDER**
------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

In an opinion rendered on October 26, 2007, the Court, <u>inter alia</u>, approved incentive awards of $1,000 to two of the three class representatives in the above-captioned class action litigation. The two representatives appealed to the Second Circuit for review of the Court's incentive award determination. The parties to the appeal subsequently stipulated to a remand to permit the Court to consider a proposed compromise. Class counsel have now moved the Court to approve a plan whereby class counsel will pay each appealing plaintiff $19,000--the difference between the incentive award originally sought and the one approved by the Court--in exchange for the dismissal of the appeal. For the reasons that follow, the Court grants class counsel's motion.

**I.   BACKGROUND**

On September 26, 2006, the Court issued an opinion approving the settlement of litigation brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") by

participants in AOL Time Warner, Inc.'s ("AOLTW")[1] 401(k) defined contribution plans (the "Settlement"). See In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006). Then, on October 26, 2007, the Court issued a memorandum opinion that, inter alia, granted incentive awards of $1,000 each to named plaintiffs Rita Roberts Hill ("Hill") and Barbara Grant ("Grant"), and of $500 to named plaintiff Steven Winfield ("Winfield"). See In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), 2007 WL 3145111, at *4 (S.D.N.Y. Oct. 26, 2007) (the "Award Opinion"). Named plaintiffs Grant and Hill (the "Appealing Plaintiffs"),[2] who had sought incentive awards of $20,000 each, have appealed the Award Opinion to the Second Circuit Court of Appeals. See In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), Dkt. No. 102.

Co-lead counsel for the class ("Co-Lead Counsel")--who are also representing the Appealing Plaintiffs on appeal--subsequently expressed interest in formulating a plan "to facilitate a prompt class distribution while the appeal is pending." (Co-Lead Counsel's Letter, Dec. 3, 2007.) Co-Lead Counsel asserted that distributing the Settlement proceeds to

---

[1] Although defendant AOLTW has changed its name to Time Warner, Inc., for clarity, the Court will continue to refer to the merged entity as AOLTW.
[2] As named plaintiff Winfield has not appealed the Court's decision regarding his individual award, the Court uses the term "Appealing Plaintiffs" to refer only to appealing named plaintiffs Grant and Hill.

2

the class, while reserving $38,000 to cover the total amount sought by the Appealing Plaintiffs, would be disadvantageous to the class because "a $38,000 set-aside for the appeal would be too small to justify a second distribution and could, at most, be cy preyed for some indirect class member benefit." (Co-Lead Counsel's Letter 1, Jan. 7, 2008.) Additionally, Co-Lead Counsel represented that the cost of the appeal is likely to exceed $38,000. (Co-Lead Counsel's Letter 1, Jan. 7, 2008.) Co-Lead Counsel therefore asked the Court to issue an order authorizing a payment plan, formulated after a meeting with the Second Circuit's Staff Counsel's Office, whereby Co-Lead Counsel will pay each Appealing Plaintiff $19,000 in exchange for an agreement to dismiss the appeal (the "Payment Plan"). (See Co-Lead Counsel's Letter 1, Jan. 7, 2008.)

On January 18, 2008, the Court issued an opinion concluding that the pending appeal divested it of jurisdiction to consider the merits of the Payment Plan. See In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), 2008 WL 186194 (S.D.N.Y. Jan. 18, 2008). Co-lead Counsel subsequently obtained a stipulation and order of remand to the Court "for the sole purpose of permitting the district court to rule on the request of Co-Lead Counsel to pay [the Appealing Plaintiffs] the amounts at issue on this appeal." (See In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), Dkt. No. 105.) At the Court's direction, Co-Lead Counsel

have filed a motion expanding upon their arguments in favor of the Payment Plan. The Court has also received and considered an objection to the Payment Plan, which was filed by four class members (the "Objectors").

## II. DISCUSSION

### A. The Payment Plan is Fair, Reasonable, and Adequate

A federal court of appeals may vest the district court with jurisdiction to consider resolutions negotiated by the parties while a case is on appeal. See, e.g., Lancaster v. Monroe County, 137 F.3d 1270, 1271 (11th Cir. 1998); Horton v. Leading Edge Mktg., Inc., 04 Cv. 212 (PSF) (CBS), 2007 WL 2472046, at *1 (D. Colo. Aug. 28, 2007); Miller v. City of Philadelphia, 00 Cv. 3263, 2002 WL 31730911, at *1 (E.D. Pa. Oct. 18, 2002). As the proposed Payment Plan has arisen within the settlement phase of class action litigation, the Court will evaluate the plan to determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).[3]

---

[3] Although the Court looks to the "fair, reasonable, and adequate" standard set forth in Rule 23(e)(1)(C) for guidance when assessing the Payment Plan, it notes that Rule 23(e)'s procedural requirements, see Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 247 (2d Cir. 2007) ("Under Fed. R. Civ. P. 23(e)(1)(C), the court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.") (internal quotation marks and citation omitted), are not triggered here. As the Court will discuss in greater detail, the Payment Plan

4

As an initial matter, it is crucial to clarify the precise nature of the Court's decision. The procedural posture of this case, and the Second Circuit's order of remand, empower the Court to rule on the propriety of a proposed resolution of a collateral issue during the pendency of an appeal. This is not a

---

constitutes the resolution not of the class action itself but of a collateral matter. Thus, no additional notice or hearing is required in this case. See Weight Watchers of Philadelphia v. Weight Watchers Int'l, 455 F.2d 770, 773 (2d Cir. 1972) ("[I]t is only the settlement of the class action itself without court approval that [Rule 23(e)] prohibits.") (citations omitted); see also Shelton v. Pargo, Inc., 582 F.2d 1298, 1303 (4th Cir. 1978) (stating that Rule 23(e) "is confined in operation to the settlement and dismissal of a class action"). The Court also declines to exercise its discretion, see Fed. R. Civ. P. 23(d)(1)(B) (vesting court with discretion to require additional notices "to protect class members and fairly conduct the action"); Quern v. Jordan, 440 U.S. 332, 335 n.3 (1979); Ayzelman v. Statewide Credit Servs. Corp., 242 F.R.D. 23, 29 (E.D.N.Y. 2007), to require additional notice to class members. Class members already received notice that the Named Plaintiffs would seek incentive awards of up to $20,000 each. See 02 Cv. 8853 (SWK), Dkt. No. 74, Ex. 2; In re AOL Time Warner, 2006 WL 2789862, at *10 (holding that notice was adequate); compare In re S. Ohio Correctional Facility, 24 Fed. Appx. 520, 527-29 (6th Cir. 2001) (striking down incentive award not specifically provided for in settlement agreement). The Appealing Plaintiffs would receive no more than $20,000 under the Payment Plan. Moreover, the Payment Plan neither binds nor affects the rights of any class members other than the Appealing Plaintiffs. Cf. In re Presidential Life Sec., 857 F. Supp. 331, 337 (S.D.N.Y. 1994) (holding that "[t]he interests of the class, of the public, and of the defendant are not directly affected" by incentive award paid from attorney's fees awarded to plaintiffs' counsel). Therefore, the Court will not require further process before assessing the Plan. Cf. In re Gypsum Antitrust Cases, 565 F.2d 1123, 1127 (9th Cir. 1977) ("Whether due process commands that nonparty class members be given notice of a particular turn of an action after they have received actual notice of the action itself is dependent upon whether such notice is required for the fair representation of their interests.").

5

reconsideration of the Court's prior decision on the merits. Therefore, the legal question at issue is not whether the Payment Plan is justified as an incentive award to the Appealing Plaintiffs (i.e., whether the Appealing Plaintiffs' conduct merits an award), but whether implementation of the Payment Plan would further or harm the interests of the class members. Because this decision is entirely separate from the Court's evaluation of the Named Plaintiffs' request for incentive awards, approval of the Payment Plan would have no effect on the Court's holdings in the Award Opinion. The Objectors' contention that the Court lacks power to "reverse itself," (Objection 5), is therefore inapposite.

After reviewing the record of this litigation as a whole, the terms of the Settlement, Co-Lead Counsel's arguments in favor of the Payment Plan, and the various arguments raised by the Objectors, the Court concludes that the Plan is fair, reasonable, and adequate to class members and merits approval. First, the Plan does not harm the interests of the Appealing Plaintiffs. The Plan allows them to receive $19,000 each, which, when combined with the $1,000 incentive award that each has received, leaves them with the amount of money that they sought under the terms of the Settlement Agreement. The Appealing Plaintiffs therefore face no evident pressure from their

attorneys to accept a less favorable arrangement in exchange for the dismissal of their appeal.

Furthermore, the Payment Plan does not harm the interests of the class, but rather, it advances the class's interests. The Court has already concluded that the Settlement agreement reached in this case was fair, see In re AOL Time Warner ERISA Litig., 2006 WL 2789862, at *5, *5-9, and that "[a]t all times, the Named Plaintiffs . . . acted independently," In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), Dkt. No. 84 ¶ 6E. The payment to the Appealing Plaintiffs at this stage of the proceedings does nothing to alter that fact. Cf. McBean v. City of New York, 233 F.R.D. 377, 391 (S.D.N.Y. 2006) (holding that grant or denial of incentive awards after settlement does not alter incentives that existed at time of settlement's negotiation). Also, should the Appealing Plaintiffs win their appeal, the resulting judgment would result in an additional deduction of up to $38,000 from the Settlement fund. (See Co-Lead Counsel's Mot. 7.) The Payment Plan eliminates this possibility and allows that money to be distributed among the entire class. Lastly, the Plan eliminates the risk of a lengthy appeal that could stretch beyond the time allotted for claims evaluation and thereby delay distribution of the Settlement

proceeds.[4] Indeed, the Payment Plan advances both the interest in judicial economy, and the judicial policy in favor of settlement. See, e.g., In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132, 138 (2d Cir. 1998); Ingram v. Coca-Cola Co., 200 F.R.D. 685, 688 (N.D. Ga. 2001). In sum, the Court finds that the proposed Payment Plan has only a small effect on the class, cf. In re Presidential Life Secs., 857 F. Supp. 331, 337 (S.D.N.Y. 1994) (reaching similar conclusion in context of incentive awards paid from plaintiffs' counsel's attorney's fees); accord In re Cendant Corp., 232 F. Supp. 2d 327, 344 (D.N.J. 2002), and any effect that will obtain is positive.

Nonetheless, the Objectors argue, in their February 13, 2008 letter to the Court (the "February 13 Letter"), that the Payment Plan violates Disciplinary Rule 3-102,[5] which generally prohibits the division of legal fees with a non-lawyer.[6]

---

[4] The Objectors dispute Co-Lead Counsel's contention that such a delay is likely and aver that "a[n appellate] decision would probably issue by the end of this summer." (Objection 4.) The Objectors further argue that resolution of the appeal "may well be worth" a few months' delay in distribution of the Settlement proceeds. (Objection 5.) Because there are other factors that weigh in favor of approving the Payment Plan, the Court only notes that Co-Lead Counsel has identified a colorable risk of delay (see Co-Lead Counsel's Reply 4) and need not determine that risk's precise magnitude.
[5] Courts in this Circuit look to the New York State Lawyer's Code of Professional Responsibility for guidance. See Local Civ. R. 1.5(b)(5); Shabbir v. Pak. Int'l Airlines, 443 F. Supp. 2d 299, 305-06 (E.D.N.Y. 2005) (citations omitted).
[6] In the February 13 letter, the Objectors actually cited Disciplinary Rule 3-102(A)(3). (Objectors' Letter 1, Feb. 13,

(Objectors' Letter 1, Feb. 13, 2008.) In what appears to be the only opinion addressing this rule within the context of awards to individual plaintiffs, Judge Broderick questioned Disciplinary Rule 3-102's applicability, holding only that a comparatively small incentive award paid from attorney's fees would not allow lawyers to "obtain a built-in plaintiff for any contemplated lawsuit." In re Presidential Life Sec., 857 F. Supp. at 337. Although, as discussed supra, the Payment Plan does not constitute an incentive award per se but rather a tool in the resolution of a pending appeal, the concerns identified by Judge Broderick are instructive. The Payment Plan was not a prearranged "promise" between counsel and client[7] but a

---

2008.) This precise provision is inapposite, as it involves compensation of a non-lawyer employee. See N.Y. Code of Prof'l Responsibility DR 3-102(A)(3) (2008). The Objectors' subsequent, formal objection (which reproduces verbatim certain portions of the February 13 Letter) contains a vague reference to "the disciplinary rule prohibiting fee-sharing" but features no additional arguments or legal precedent supporting its contention that a disciplinary rule is being infringed. Nonetheless, the Court will address the general principles of Disciplinary Rule 3-102 when assessing this objection to the Payment Plan.

[7] Co-Lead Counsel and both Appealing Plaintiffs all aver that they had no "prior or continuing relationship" outside of the instant litigation (Co-Lead Counsel's Mot. 10), and that "no payments to the [Appealing Plaintiffs] have been made" (Co-Lead Counsel's Mot. 10). (See Co-Lead Counsel's Mot., Declaration of Rita Roberts Hill ¶¶ 2-3; Declaration of Barbara Grant ¶¶ 2-3; Declaration of Edwin J. Mills ¶¶ 2-3.) Moreover, the fact that the payment is strictly limited to the amount sought on appeal, and is being offered only to the two named plaintiffs who pursued an appeal, bolster's Co-Lead Counsel's assertion that

resolution to an appeal, created in earnest to benefit both the Appealing Plaintiffs and the absent class members, fully disclosed from its inception, cf. Rodriguez v. West Pub. Corp., 05 Cv. 3222, 2007 WL 2827379, at *20 (C.D. Cal. Sept. 10, 2007) (disapproving incentive award paid from attorney's fees because, inter alia, counsel requested award pursuant to preexisting, contractual promise to client that was never disclosed to absent class members or court). Moreover, the proposed Plan arises in the ERISA context, where it is nearly impossible for a plaintiff to have or create standing in a slew of cases. (See Co-Lead Counsel's Mot. 9 (noting that, "[w]hile a 'professional' securities plaintiff can have standing in hundreds of cases simply by purchasing a single share of stock," the "conditions precedent to becoming a 401(k) plan participant" preclude similar strategic maneuvering in ERISA litigation).) Therefore, although the Appealing Plaintiffs would receive more than the

---

this is a genuine attempt to resolve the appeal and not a previously-promised bounty payment to the Appealing Plaintiffs.
  The Objectors voice suspicion of an undisclosed, nefarious, preexisting arrangement but admit that they "have no evidence to support such a theory." (See Objection 3 n.2.) In this respect, the Objectors appear to be continuing their unfortunate attempts to conjure allegations of villainy from thin air. See In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), Dkt. No. 80, at 6 (calling incentive award request part of "a disclosed kickback scheme"); In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), 2007 WL 4225486, at *3 (S.D.N.Y. Nov. 28, 2007) (characterizing this argument as "nothing more than a weak attempt to impute one unrelated firm's alleged illegalities to class counsel"). Especially in light of the sworn declarations to the contrary, the Court refuses to indulge the Objectors' rank speculation.

10

$2,000 awarded to the plaintiffs in In re Presidential Life, the payment plan would not create "a potential cadre of ready-to-sue clients," 857 F. Supp. at 337. In sum, under the circumstances, the Payment Plan does not violate the New York disciplinary rule against fee-sharing.[8]

The Objectors also argue that the Court should not approve the plan because "the savings from avoiding [the Appealing Plaintiffs'] appeal are to [counsel] and the [Appealing

---

[8] The Rodriguez Court did reject the incentive awards requested in that case in part because they constituted "indirect fee-sharing." Rodriguez, 2007 WL 2827379, at *21. This conclusion, however, is inapplicable to the instant case for several reasons. First, the Rodriguez Court based its fee-sharing conclusion in part on the ex ante, contractually binding promise by class counsel to seek incentive awards in amounts unrelated to the degree of effort expended by the class representatives. See id., 2007 WL 2827379, at *20-*21 (holding that agreement constituted fee-sharing, even though award money would come from settlement fund, because class counsel "agreed to seek the fee, regardless of whether or not it was actually warranted, to ensure they would be selected by Plaintiffs to bring the case"). As already discussed, see supra note 7 and accompanying text, no such prior agreement exists here. Additionally, to the extent that the Rodriguez Court's decision depends upon more generalized principles that incentive awards may never come from attorney's fees, see id. at *21 (interpreting California's disciplinary rules and citing unpublished California state court decision), or that any incentive award is inherently suspect as fee-sharing, see id. (citing In re Gould Sec. Litig., 727 F. Supp. 1201, 1209 (N.D. Ill. 1989)), it is distinguishable, as courts in this Circuit have adopted neither stance, see, e.g., Velez v. Majik Cleaning Serv., Inc., 03 Cv. 8698 (SAS) (KNF), 2007 U.S. Dist. LEXIS 46223, at *22 (S.D.N.Y. June 22, 2007) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court.") (quoting Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)); In re Presidential Life, 857 F. Supp. at 337 (approving incentive award to be paid from attorney's fees).

Plaintiffs], not to the class." (Objection 4.) For the reasons discussed above, however, the Court disagrees with this contention, as the Payment Plan eliminates the risks of (a) a deduction of an additional $38,000 from the Settlement fund following a successful appeal, and (b) a delay in distribution of the Settlement proceeds. The Plan's additional potential to spare Co-Lead Counsel and the Appealing Plaintiffs the cost of an appeal is not cause for invalidation.

Additionally, the Objectors intimate that the class members' interest in appellate review could outweigh their interest in prompt distribution of Settlement proceeds. (See Objection 4-5.) The Court disagrees. The class members would undoubtedly benefit from an appellate decision denying the pending appeal, as the $38,000 at stake would remain available for general distribution. The class, however, would enjoy the same result under the Payment Plan. Although the class members might benefit from the appellate determination of an unresolved legal question, this generalized advantage, which inures to the public at large, does not outweigh the harm that the class would suffer if the appeal delayed distribution of the Settlement funds or forced the creation of a $38,000 set-aside destined to fund a cy pres remedy. For these reasons, the arguments raised by the Objectors are insufficient to defeat Co-Lead Counsel's request.

In the Award Opinion, the Court expressed caution regarding the disparity between incentive awards given to lead plaintiffs and the recovery obtained by absent class members. See 2007 WL 3145111, at *3; see also id. at *4 ("[T]he desire to incentivize lead plaintiff participation must be tempered by an equally important quest for parity and fairness among class members."). Admittedly, approval of the Payment Plan allows Co-Lead Counsel to create the type of imbalance that Courts have sought to minimize. See, e.g., In re Sprint Corp. ERISA Litig., 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006). The current circumstances, however, involve a different interplay of interests than that at issue in the Award Opinion, as any additional monetary gain to the Appealing Plaintiffs would not come at the expense of the absent class members. Furthermore, in light of the risks to the class associated with the continuance of the appeal, an unyielding attempt to maintain parity could ultimately harm absent class members. The proposed Payment Plan minimizes adverse risks and still conforms to the requirements of professional responsibility.[9] The Court therefore concludes, in

---

[9] It is also unlikely that today's ruling will lead to rampant subterfuge by attorneys and plaintiffs seeking to evade the strictures of incentive award jurisprudence. Theoretically, a self-interested class representative could demand an excessive incentive award, suspecting that, if he insisted on appealing the district court's denial of that award, class counsel might appease him by making up the difference using attorney's fees. Similarly, attorneys looking for a lead plaintiff to bring a

light of all the circumstances, see County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1428, 1436 (E.D.N.Y. 1989), aff'd in part, rev'd in part on other grounds, 907 F.2d 1205 (2d Cir. 1990), that the Payment Plan is fair, reasonable, and adequate.[10]

### B. The Court Lacks Jurisdiction to Consider the Remaining Objection

In addition to the arguments discussed above, the Objectors assert that the Court should reject the proposed Payment Plan because Co-Lead Counsel violated their fiduciary duty to the class by representing the Appealing Plaintiffs as appellants on appeal while also purporting to join the class as appellees. (See Objection 1-3.) Although the Court may consider Co-Lead Counsel's representations and behavior in connection with the formulation of the Payment Plan, a more generalized evaluation of Co-Lead Counsel's conduct before the Second Circuit falls

---

lucrative class action suit may offer the same scheme as an enticement. The prerequisite to each of these scenarios, however, is the type of preliminary strategizing and undisclosed promises already subject to vigilant policing by the courts. See, e.g., In re Ohio Correctional Facility, 24 Fed. Appx. at 527-29; Rodriguez, 2007 WL 2827379, at *20.

[10] This holding is strictly limited to the instant circumstances. Although the Court considered the size of the award to the extent that it affects the fairness of this Payment Plan to the Appealing Plaintiffs, or reflects the genuineness of Co-Lead Counsel's stated intentions, today's holding does not establish a range of acceptability for payments of this type. Nor does the Court have any opportunity to consider whether it would have approved a settlement agreement that provided for the payment of incentive awards from attorney's fees in the first instance.

14

outside the scope of the jurisdictional mandate enunciated in the order of remand. See In re AOL Time Warner ERISA Litig., 02 Cv. 8853 (SWK), Dkt. No. 105; cf. also Fed. R. App. P. 46(c) (establishing appellate court's power to "discipline an attorney who practices before it"); In re AOL Time Warner Sec. & "ERISA" Litig., MDL No. 1500, 02 Cv. 5575 (SWK), 2007 WL 2741033, at *6 (S.D.N.Y. Sept. 20, 2007) (noting appellate court's superior ability to assess attorneys' conduct on appeal). The Court therefore confines its inquiry into Co-Lead Counsel's actions to the parameters of the Second Circuit's limited mandate and will not address the issue of Co-Lead Counsel's conduct before the appellate court.

## III. CONCLUSION

For the foregoing reasons, Co-Lead Counsel's proposed Payment Plan is hereby approved. Co-lead Counsel are ordered to submit payment to the Appealing Plaintiffs, and to assist them in dismissing their appeal, as soon as practicable. Additionally, the proceeds of the Settlement shall be distributed to class members upon completion of the claim evaluation process.

SO ORDERED.

```
                                  _____
                                       SHIRLEY WOHL KRAM
                                  UNITED STATES DISTRICT JUDGE
```

Dated:     New York, New York
           April 9, 2008

SO ORDERED.

---
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         April 9, 2008

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
4/9/08